UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN AMBULATORY
SURGICAL CENTER, LLC,

                     Case No. 16-cv-14507

          Plaintiff,

                     Paul D. Borman
v.                      United States District Judge

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

          Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 30)

This case involves Plaintiff Michigan Ambulatory Surgical Center, LLC's ("Michigan Ambulatory") claim for the payment of no-fault insurance benefits for treatment provided on February 9, 2016, to Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") insured, Tamika R. Burrell, in connection with injuries allegedly suffered by Ms. Burrell in an August 19, 2014 motor vehicle accident. Michigan Ambulatory relies on two different assignments from Ms. Burrell in making its claim for payment from State Farm.

State Farm filed a motion for summary judgment (ECF No. 30) and Plaintiff

1

filed a response (ECF No. 31). The Court held a hearing on June 28, 2018, and received supplemental briefing from the Plaintiff on July 4, 2018 (ECF No. 34). For the reasons that follow, the Court GRANTS State Farm's motion for summary judgment.

## I.      BACKGROUND

Ms. Burrell was involved in an automobile accident on August 19, 2014, while merging onto Northbound I-75 from EB I-696, when she was unable to stop and crashed into the back of the vehicle in front of her. (ECF No. 30, Def.'s Mot. Summ. J. Ex. B, State of Michigan Crash Report PgID 776.) At the time, Ms. Burrell was insured with State Farm under a no-fault insurance policy. Responding officers categorized the extent of damage to both vehicles as a category "1," noting that neither vehicle's airbags deployed. (*Id*.) The Royal Oak Fire Department responded, noting that Ms. Burrell was alert and oriented, complaining of pain in multiple areas, but had no visible sign of injury. Royal Oak responders noted that there was "very little damage to her vehicle," and her "airbag did not deploy." (*Id*. Ex. C, Royal Oak Fire Department Patient Care Record PgID 780.) Despite the minimal damage to the vehicles, both of which were driveable, Ms. Burrell was taken by ambulance to Southfield Providence Hospital. (*Id*. at PgID 781.) Ms. Burrell was informed at the Emergency Department that her exam did not show any sign of serious injury from

the car accident. She was given prescriptions for Ibuprofen, Darvocet, and Eye Drops and was released that same day with no restrictions. (Def.' Mot. Summ. J. Ex. D, Providence Hospital ED Notes, PgID 784-788.) Ms. Burrell continued to treat with various providers over the next several months, and State Farm paid benefits of nearly $31,000.00, until March 13, 2015, when State Farm discontinued benefits based on a provider's report that Ms. Burrell had reached maximum improvement as a result of her 2014 car accident and based upon surveillance video of Ms. Burrell demonstrating her improved physical abilities. (*Id*. Exs. E-G.) According to State Farm, subsequent examinations of Ms. Burrell ordered by State Farm demonstrated that any injuries she had sustained as a result of the August 2014 automobile accident had resolved and none of her accident-related injuries necessitated surgery.

On February 9, 2016, Ms. Burrell did undergo surgery at Michigan Ambulatory for injuries Michigan Ambulatory alleges are related to her August 19, 2014 automobile accident. The total cost of the services provided by Michigan Ambulatory was $123,467.00. (ECF No. 31, Pl.'s Resp. to Mot. Summ. J. Ex. B.)[1] In its original Complaint in this action, Michigan Ambulatory sought to recover no-fault benefits

---

[1] Plaintiff's physical condition, and the necessity (or not) for the surgical procedure at Michigan Ambulatory on February 9, 2016, are not at issue in this action. As a point of note, Plaintiff does not dispute any of this factual background, which was provided by State Farm, and proceeds directly to the subject of the assignments, which are at the heart of this case.

directly from State Farm under Michigan's No-Fault statute for unpaid medical expenses for surgical services provided to Ms. Burrell on February 9, 2016, for injuries allegedly related to the August 19, 2014 accident. As a result of the Michigan Supreme Court's May 25, 2017 decision in *Covenant Medical Center, Inc. v. State Farm Mut. Auto. Ins. Co.*, 500 Mich. 191 (2017), which established that medical providers such as Michigan Ambulatory do not have a statutory claim under the Michigan No-Fault Act to recover personal protection insurance benefits directly from no-fault insurers, Michigan Ambulatory now seeks to rely instead on two separate assignments, one executed by Ms. Burrell on the day of her February 9, 2016 surgery and one executed by her on June 12, 2017, after the *Covenant* decision was issued and after Ms. Burrell had settled with State Farm her claim for no-fault benefits allegedly related to her August 19, 2014 accident through case evaluation in another case before this Court. That case evaluation resulted in a dismissal with prejudice of Ms. Burrell's claims for no-fault benefits from State Farm related to her August 19, 2014 automobile accident.[2] *ZMC Pharmacy, LLC v. State Farm Mutual Auto. Ins. Co.*, 307

---

[2] In an Opinion and Order issued on March 30, 2018, this Court denied State Farm's motion to dismiss this action because State Farm relied on matters outside the pleadings. But the Court granted Plaintiff's motion to amend the Complaint to rely on the assignments that are now challenged by State Farm in this motion for summary judgment. *Michigan Ambulatory Surgical Center, LLC v. State Farm Mutual Automobile Insurance Co.*, No. 16-14507, 2018 WL 1570332 (E.D. Mich. March 30, 2018). In that Opinion and Order, the Court expressly held that State Farm was not

4

F. Supp. 3d 661 (E.D. Mich. 2018).

### A.      Ms. Burrell's Lawsuit Against State Farm

On September 3, 2015, Ms. Burrell filed an action in Wayne County Circuit Court against State Farm.  On February 11, 2016, State Farm removed the case to this Court based upon diversity jurisdiction when Ms. Burrell amended her complaint and added a claim for uninsured motorist benefits up to the policy limits of $50,000.00, increasing the amount in controversy above $75,000.00.[3]  (*Burrell v. State Farm Mut. Auto. Ins. Co*., No. 16-cv-10508 (E.D. Mich. 2016) (ECF No. 1, Notice of Removal)). ZMC Pharmacy, LLC ("ZMC") and MMT Integrative Services, Inc. ("MMT") intervened in the *Burrell* action seeking to recover for medical services provided to Ms. Burrell allegedly in connection with her August 2014 motor vehicle accident. As relevant here, the parties in the *Burrell* lawsuit stipulated to submit the case to state court case evaluation in February, 2017, pursuant to Mich. Ct. R. 2.403.  (*Burrell*, 16-

---

precluded from making the arguments it presents here regarding the effectiveness of the assignments executed by Ms. Burrell on a more developed record.  The parties have agreed that the record before the Court is sufficient to enable the Court to resolve State Farm's summary judgment motion and have requested that the Court resolve the motion for summary judgment before further discovery or case evaluation.

[3]  Further detail regarding Ms. Burrell's lawsuit against State Farm, not all of which is relevant here, can be found in this Court's March 29, 2018 Opinion and Order, *ZMC Pharmacy, LLC v. State Farm Automobile Ins. Co*., 307 F. Supp. 3d 661 (E.D. Mich. 2018).

cv-10508, ECF No. 20, Stipulation to Submit Matter to State Court Evaluation.) The

parties appeared for state court case evaluation on May 9, 2017, and Plaintiff's case

evaluation summary included the bills of several providers, including the $123,467.00

bill from Michigan Ambulatory that Michigan Ambulatory seeks to recover now in

this lawsuit from State Farm. (Def.'s Mot. Summ. J., Ex. J, [Ms. Burrell's] Case

Evaluation Summary, PgID 863.) The parties were required to accept or reject case

evaluation on or before June 6, 2017, as required under Mich. Ct. R. 2.403. Both Ms.

Burrell and State Farm, as well as Intervening Plaintiff MMT, accepted the case

evaluation awards and on July 19, 2017, this Court entered a Stipulated of Order of

Dismissal dismissing all of Ms. Burrell's claims against State Farm arising out of her

August 19, 2014 motor vehicle accident. (ECF No. 22, Stipulation and Order

Dismissing With Prejudice Plaintiff Burrell's Claims Against State Farm.) MMT also

dismissed its claims against State Farm. (ECF No. 23, Stipulation and Order

Dismissing With Prejudice Plaintiff MMT's Claims Against State Farm.) Intervening

Plaintiff ZMC did not accept the case evaluation award but its claims against State

Farm were dismissed on summary judgment, and the *Burrell* case closed, in the

Opinion and Order issued by this Court on March 29, 2017. *ZMC Pharmacy, LLC v.*

*State Farm Mutual Automobile Ins. Co.*, 307 F. Supp. 3d 661 (E.D. Mich. 2018). In

that Opinion and Order, the Court concluded that ZMC could not rely on an

assignment executed by Ms. Burrell in favor of ZMC on June 12, 2017, because at that time Ms. Burrell had accepted her case evaluation award, settled her claims against State Farm for all no-fault benefits related to her August 19, 2014 motor vehicle accident, and thus had no remaining rights to collect no-fault benefits from State Farm and therefore had no such rights to assign to ZMC. *Id*. at *10. As discussed *infra*, because *Covenant* determined that a provider's rights to recover no-fault benefits were entirely derivative of the insured's and ZMC therefore had no independent cause of action against State Farm, and because Ms. Burrell, who settled her claims against State Farm for all no-fault benefits due her as a result of the August, 2014 automobile accident had no such rights to assign to ZMC on June 12, 2017, the Court granted State Farm's motion to dismiss ZMC. ZMC did not appeal that ruling.

### B.    The February 9, 2016 Assignment

On February 9, 2016, at 8:26 a.m. the morning of her surgery at Michigan Ambulatory while she was in the pre-operative stages of her procedure, Ms. Burrell executed an "Assignment of Rights and Guarantee," which states that Ms. Burrell was then "experiencing injuries arising from an accident that occurred on ^Date^ [sic]."[4] The Assignment states:

---

[4]  Specialty Surgical Center and Michigan Ambulatory are the same legal entity, as this Court concluded in its prior Opinion and Order.  2018 WL 1570332, at *5 n. 3.

**Assignment of Rights**

I hereby assign to Specialty Surgical Center (the "Center") my right to collect no-fault insurance from my auto insurer for my care at the Center. I understand that this assignment does *not* include my right to any other no-fault benefits to which I may be entitled, nor benefits for my care by any provider other than the Center.

I understand and agree that should I pursue a lawsuit against my auto insurer, my attorney shall have authority to collect on behalf of the Center any bills owed the Center for my care. Further, I agree to notify the Center immediately to pursue its rights to expenses owed for my care under a lawsuit.

I understand and agree that this assignment of rights simply allows the Center to collect bills for my care at the Center directly from my auto carrier; it does *not* relieve me of my obligation for payment of any medical bills for my care at the Center.

**Guarantee**

I guarantee payment of my medical expenses at the Center out of settlement of my claim related to the above-identified accident or episode.

Should a judge or jury determine my injuries are not related to a motor vehicle accident, this assignment of rights shall be voided, and I will be obligated to pay the full amount owed to the Center.

(Def.'s Mot. Ex. I, 2/9/16 Assignment of Rights).[5]

---

[5] In its prior Opinion and Order in this case denying State Farm's motion to dismiss and granting Michigan Ambulatory leave to amend, this Court determined that Plaintiff had pleaded facts plausibly suggesting that the 2/9/16 Assignment, which was signed by Ms. Burrell in the pre-operative phase of her surgical procedure, assigned Ms. Burrell's *present* (and not future) rights to payment as they became due because it used present tense language to presently transfer "the thing" to the assignee. 2018

## C. Ms. Burrell's Post-Case Evaluation Assignment to Michigan Ambulatory

As noted *supra*, on June 12, 2017, after Ms. Burrell had accepted the May 9, 2017 case evaluation award in the *Burrell* case, and settled her claims against State Farm for no-fault benefits related to her August 2014 motor vehicle accident, Ms. Burrell executed an Assignment of rights to Michigan Ambulatory, as she had done in favor of ZMC on that same date. The June 12, 2017 Assignment to Michigan Ambulatory purported to assign to Michigan Ambulatory Ms. Burrell's "no-fault benefits presently due or past due incurred as a result of" Ms. Burrell's August 19, 2014 motor vehicle accident. (Def.'s Mot. Summ. J. Ex. L, Assignment of No-Fault Claim and Release of Medical and Insurance Information.) That June 12, 2017 Assignment provided:

> I assign to Michigan Ambulatory Surgical Center, d/b/a Specialty Surgical Center all no-fault benefits presently due or past due incurred as a result of my automobile accident(s) and relating to the reimbursement of medical billings by Michigan Ambulatory Surgical

---

WL 1570332, at *6 (citing *Estate of Grimmett v. Encompass Indemnity Co*., No. 14-cv-14646, 2017 WL 5592897, at *4 (E.D. Mich. Nov. 21, 2017) (quoting *Aetna Ins. Co. v. Starkey*, 116 Mich. App. 640 (1982)). In its March 30, 2018 Opinion and Order, the Court examined the issue raised by State Farm of whether the Complaint plausibly pleaded the purported assignment of *present* (as distinct from future) rights to payment in the 2/9/16 Assignment. The Court was not called upon to, and did not, interpret any other language of that Assignment or express any opinion on the validity of any other aspect of the 2/9/16 Assignment in its March 30, 2018 Opinion and Order.

Center, d/b/a Specialty Surgical. I assign my right to recover no-fault interest and attorney's fees as it relates to the reimbursement of these medical billings. I am not assigning any future benefits.

I understand that Michigan Ambulatory Surgical Center d/b/a Specialty Surgical may pursue collection on its own behalf against my insurance company. I grant Michigan Ambulatory Surgical Center d/b/a Specialty Surgical and/or its attorneys permission to receive all personal or medical information including, but not limited to , insurance claim files, insurance policies, and all medical records.

(Def.'s Mot. Summ. J. Ex. L, 6/12/17 Assignment of No-Fault Claim and Release of Medical and Insurance Information.)

In this Court's March 30, 2018 Opinion and Order dismissing ZMC, the Court declined to dismiss Michigan Ambulatory because Michigan Ambulatory was not a named party to the *Burrell* lawsuit and because State Farm's claim that Michigan Ambulatory's bill nonetheless was included by Ms. Burrell in her state court case evaluation relied on matters outside the pleadings that the Court could not properly consider on State Farm's motion to dismiss under Fed. R. Civ. P. 12(b)(6). State Farm now presents undisputed evidence that Ms. Burrell *did* expressly "blackboard" Michigan Ambulatory's bill in her state court case evaluation, that Michigan Ambulatory *had* notice that its bill was included the case evaluation process, and that Michigan Ambulatory elected not to intervene in *Burrell* or otherwise participate in the case evaluation process.

Michigan Ambulatory now purports to rely on these two Assignments in pursuing its claim for no-fault benefits against State Farm for its February 9, 2016 treatment of Ms. Burrell. But because Ms. Burrell, the assignor and sole possessor of the statutory right to obtain no-fault benefits under the Michigan no-fault act, filed a lawsuit against State Farm and settled in full her claim against State Farm for no-fault benefits due her as a result of her August 19, 2014 motor vehicle accident, Michigan Ambulatory must look to Ms. Burrell, not to State Farm, for payment of its charges for Ms. Burrell's February 9, 2016 surgery.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may file a motion for summary judgment "at any time until 30 days after the close of all discovery," unless a different time is set by local rule or court order. Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a

11

genuine issue of material fact." *Celotex*, 477 U.S. at 323.

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). "The evidence and all reasonable inferences which may be drawn therefrom must be viewed in the light most favorable to the party opposing the summary judgment motion." *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)).

If this burden is met by the moving party, the non-moving party's failure to

make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 324. "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations omitted). In doing so, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment). "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P.

56(c)(1)(A).

## III.  ANALYSIS

There is no dispute, after the Michigan Supreme Court's decision in *Covenant*, that medical providers such as Michigan Ambulatory do not have an independent statutory cause of action under the Michigan No-Fault Act to recover personal protection insurance ("PIP") benefits from no-fault insurers.  Further, the Michigan Court of Appeals decision in *Foote Memorial Hosp. v. Michigan Assigned Claims Plan*, 321 Mich. App. 159, 196 (2017), establishes that *Covenant* applies retroactively. The Michigan Court of Appeals has reiterated that *Covenant* applies retroactively: "This Court has already held in two recent published decisions that *Covenant* applies retroactively."  *Jawad A.  Shah, M.D. v. State Farm Mutual Auto. Ins. Co.*, No. 340370, 2018 WL 2121787, at *4 (Mich. Ct. App. May 8, 2018) (citing *Foote* and *VHS Huron Valley Sinai Hosp. v. Sentinel Ins. Co.*, 322 Mich. App. 707 (2018)). Likewise, there is no dispute that Michigan Ambulatory's claims are derivative of Ms. Burrell's claims as the insured is the only person entitled to claim PIP benefits under the Michigan No-Fault statute.  *Foote*, 321 Mich. App. at 174 ("the right to bring a personal protection insurance action . . . belongs to the injured party") (quoting *Hatcher v. State Farm Mut. Ins. Co.*, 269 Mich. App. 596, 600 (2005)).  *Covenant* thus dictates that at the time Ms. Burrell executed the February 9, 2016 Assignment,

14

Michigan Ambulatory did not have an independent statutory right to commence a lawsuit against State Farm to recover no-fault PIP benefits that were due and owing to Ms. Burrell.

It is also understood following *Covenant*, which expressly declined to alter the rights of an insured to assign rights to a medical provider, that a provider is not precluded from presenting claims based on a valid contractual assignment from the insured for presently or past due benefits. "[O]ur conclusion today is not intended to alter an insured's ability to assign his or her right to past or presently due benefits to a healthcare provider." *Covenant*, 500 Mich. at 217 n. 40.  Plaintiff purports to rely on two separate assignments here: the one executed on February 9, 2016, the day of her surgery at Michigan Ambulatory, and one executed on June 12, 2017, after Ms. Burrell had settled her lawsuit with State Farm for no-fault PIP benefits she alleged were due and payable as a result of her August 2014 motor vehicle accident.

The parties agree that Michigan substantive law governs the issues presented in State Farm's motion and they do not dispute the generally applicable principles of the law of assignments.  It is axiomatic that "'[a]n assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses.'" *Jawad A. Shah*, 2018 WL 2121787, at *8 (quoting *Burkhardt v. Bailey*, 260 Mich. App. 636, 653 (2004)).  Michigan courts apply the following principles in analyzing

the validity of an assignment:

> In *Weston v. Dowty*, 163 Mich.App. 238, 242, 414 N.W.2d 165 (1987), this Court opined "there must be a perfected transaction between the parties which is intended to vest in the assignee a present right in the thing assigned." Further, Michigan's version of the statute of frauds requires that an assignment of "things in action" be "in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise...." M.C.L. § 566.132(1)(f). Thus, under Michigan law, a written instrument, even if poorly drafted, creates an assignment if it clearly reflects the intent of the assignor to presently transfer "the thing" to the assignee. *Hovey v. Grand Trunk W. R. Co.*, 135 Mich. 147, 149, 97 N.W. 398 (1903).
>
> Foreign jurisdictions have also held generally that an assignment requires an assignor's intent to presently assign be clearly manifested. "No 'particular form of words is required for an assignment, but *the assignor must manifest an intent to transfer and must not retain any control or any power of revocation.*'" *Travertine Corp. v. Lexington–Silverwood*, 670 N.W.2d 444, 447 (Minn. App., 2003), quoting *Minnesota Mut. Life Ins. Co. v. Anderson*, 504 N.W.2d 284, 286 (Minn.App., 1993). *See, also, E & L Rental Equip., Inc. v. Gifford*, 744 N.E.2d 1007, 1011 (Ind. App., 2001), quoting *Brown v. Indiana Nat'l Bank*, 476 N.E.2d 888, 894 (Ind. App., 1985): "'In determining whether an assignment has been made, the question is one of intent. A written agreement assigning a subject matter must manifest the assignor's intent to transfer the subject matter clearly and unconditionally to the assignee.'" (Citations omitted.)

*Burkhardt*, 260 Mich. App. at 654-55 (emphasis added). Finally, while "the general rule [is] that a third party cannot challenge an assignment," a third party may challenge an assignment where the challenge would "'render[] the assignment absolutely invalid or ineffective, or void.'" *Keyes v. Deutsche Bank Nat. Trust Co.*,

921 F. Supp. 2d 749, 756 (E.D. Mich. 2013) (quoting *Livonia Props. v. 12840–12976 Farmington Road Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010)).

### A.    The February 9, 2016 Assignment

Ms. Burrell did not "unconditionally" assign to Michigan Ambulatory her right to collect no-fault PIP benefits from State Farm in the February 9, 2016 Assignment. In fact, by the clear and unambiguous language of that Assignment, Ms. Burrell expressly "retained control" over her right to sue State Farm to collect no-fault PIP benefits, including those benefits due for the services provided by Michigan Ambulatory on February 9, 2016. *Burkhardt*, 260 Mich. App. at 655. Far from "unconditionally" assigning her right to collect no-fault PIP benefits to Michigan Ambulatory, Ms. Burrell clearly reserved the right to commence a lawsuit against State Farm, to notify Michigan Ambulatory of any such proceeding and to attempt to collect in such a proceeding any bills that Ms. Burrell owed to Michigan Ambulatory arising out of her August 19, 2014 motor vehicle accident. Indeed Ms. Burrell guaranteed, in her February 9, 2016 Assignment, that she would pay any expenses she had incurred at Michigan Ambulatory related to the accident out of any settlement of her claim for no-fault PIP benefits. The record establishes that Ms. Burrell did include the Michigan Ambulatory bill in her state court case evaluation, that Michigan Ambulatory had notice of that proceeding, and elected not to

participate. Under the terms of the February 9, 2016 Assignment, Michigan Ambulatory may have a claim against Ms. Burrell, but not against State Farm. *See Covenant*, 500 Mich. at 217 ("This conclusion does not mean that a healthcare provider is without recourse; a provider that furnishes healthcare services to a person for injuries sustained in a motor vehicle accident may seek payment from the injured person for the provider's reasonable charges."). Because *Covenant* establishes that Michigan Ambulatory never had an independent statutory right to collect no-fault benefits directly from State Farm, and because Ms. Burrell expressly retained her right to commence a lawsuit against State Farm to collect all no-fault benefits owed her as a result of her August 2014 accident in the February 9, 2016 Assignment, and in fact did so, she did not unconditionally assign that right to Michigan Ambulatory in the February 9, 2016 Assignment.

Michigan Ambulatory disputes this conclusion, relying on the following language of the February 9, 2016 Assignment: "I agree to notify the Center immediately to pursue its rights to expenses owed for my care under a lawsuit." Michigan Ambulatory argues that this language establishes that "the Assignment on February 9, 2016 not only assigned to [Michigan Ambulatory] Ms. Burrell's rights to collect the No-Fault benefits owed to [Michigan Ambulatory], but also included the right to file a lawsuit against [State Farm]." (Pl.'s Resp. 9, PgID 892.) This

interpretation of the assignment language is simply not reasonable. "Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement." *Universal Underwriters Ins. Co. v. Kneeland*, 464 Mich. 491, 496 (2001). "A contract is ambiguous if its provisions may reasonably be understood in different ways." *Id.* Because Michigan Ambulatory drafted the Assignment, any ambiguity that may exist "must be construed most strongly against [Michigan Ambulatory]." *Stark v. Kent Products, Inc.*, 62 Mich. App. 546, 547-48 (1975).

First, as discussed *supra*, the February 9, 2016 Assignment is invalid because it does not  clearly reflect Ms. Burrell's intent to unconditionally transfer and relinquish control over "the thing" (her right to collect PIP benefits from her auto insurer) purportedly transferred. But additionally, *Covenant* establishes that providers never had, and do not have, an independent statutory right to file a claim against a no-fault insurer and Ms. Burrell could not bestow such an independent right on Michigan Ambulatory by signing the February 9, 2016 Assignment. The only rights that Ms. Burrell could transfer were her rights to collect no-fault benefits – which she did not effectively do in the February 9, 2016 Assignment. In fact, Ms. Burrell unambiguously retained for herself the right to proceed in a lawsuit against State Farm to collect the benefits she claimed were owed her under the Michigan No-Fault Act,

including Michigan Ambulatory's bill. And she exercised that right when she filed suit against State Farm to collect all no-fault PIP benefits due and payable from State Farm related to her August 19, 2014 automobile accident. She did not "unconditionally" assign that right to Michigan Ambulatory, under the clear and unambiguous language of the February 9, 2016 Assignment. Therefore, the February 9, 2016 Assignment does not afford Michigan Ambulatory the right to proceed against State Farm.

### B. The June 12, 2017 Assignment

As discussed *supra* and as this Court explained in the related *Burrell* case, on or before June 6, 2017, Ms. Burrell and State Farm accepted a case evaluation award and settled in full all claims that Ms. Burrell possessed against State Farm for no-fault PIP benefits arising out of her August 19, 2014 motor vehicle accident. Pursuant to Michigan Court Rule 2.403(M)(1), Ms. Burrell's and State Farm's acceptance of the case evaluation award "dispose[d] of all [plaintiff's] claims in the action." Mich. Ct. R. 2.403(M)(1). Michigan Ambulatory, although notified of the case evaluation proceedings in which Ms. Burrell had expressly listed or "blackboarded" the Michigan Ambulatory bill, elected not to participate in that case evaluation process. Michigan Ambulatory did so at its own peril as Ms. Burrell's acceptance of the case evaluation award resulted in the settlement and dismissal of her claims against State Farm with

prejudice and extinguished Ms. Burrell's claims against State Farm for the Michigan Ambulatory bill. Therefore, Ms. Burrell had no rights to assign to Michigan Ambulatory when she executed the second assignment on June 12, 2017.

Michigan Ambulatory argues that "as of signing her Assignment on February 9, 2016, Ms. Burrell no longer owned her rights to collect No-Fault Personal Injury Benefits from [State Farm]." As discussed *supra*, Ms. Burrell did not unconditionally assign to Michigan Ambulatory her rights to collect no-fault PIP benefits from State Farm in the February 9, 2016 Assignment. And Ms. Burrell's conduct confirms that she retained the right to commence a suit to collect no-fault benefits from State Farm that were payable as a result of her August 2014 accident. The February 9, 2016 Assignment expressly reserved to Ms. Burrell her right to proceed with a lawsuit against State Farm for recovery of all no-fault PIP benefits owed her arising out of her August 2014 motor vehicle accident, specifically including the right to collect Michigan Ambulatory's bill. In that February 9, 2016 Assignment, Ms. Burrell also guaranteed that she would pay Michigan Ambulatory out of her settlement proceeds. And she did proceed with a lawsuit against State Farm, and she did notify Michigan Ambulatory, and she did blackboard Michigan Ambulatory's bill in her case evaluation statement, and she did settle all of her claims against State Farm for all no-fault PIP benefits payable to her as a result of her August 19, 2014 motor vehicle

accident.

Covenant establishes that Michigan Ambulatory's rights to collect are wholly derivative of Ms. Burrell's. Michigan Ambulatory states in its brief that "Defendant was put on notice of Plaintiff's Counsel representation on March 31, 2016 and the fact that Ms. Burrell did not have authority to represent [Michigan Ambulatory's] billings." (Pl.'s Resp. 12, PgID 895.) Of course, Michigan Ambulatory cites no authority for this blanket proposition regarding Ms. Burrell's authority to settle *her own* no-fault claim against State Farm. Michigan Ambulatory continues: "Ms. Burrell had no power to settle [Michigan Ambulatory's] bill." But saying this doesn't make it so and Michigan Ambulatory cites no law in support of this position. Michigan Ambulatory, under *Covenant*, possesses no independent statutory basis for pursuing a claim against State Farm. Its claims, if any, are entirely derivative of Ms. Burrell's claims against State Farm. Ms. Burrell settled all of her claims for no-fault PIP benefits against State Farm by accepting a case evaluation award on or about June 6, 2017, and dismissing her claim against State Farm for all no-fault benefits arising out of her August 19, 2014 automobile accident, expressly including Michigan Ambulatory's bill. She had no rights to recovery against State Farm that she could

assign to Michigan Ambulatory on June 12, 2017.[6] The June 12, 2017 Assignment does not afford Michigan Ambulatory a right to proceed against State Farm.

## IV.    CONCLUSION

For the foregoing reasons, State Farm's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  October 3, 2018

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 3, 2018.


s/Deborah Tofil
Case Manager

---

[6] As this Court noted in *ZMC*, *Covenant* was issued on May 25, 2017, and the case evaluation award could have been accepted anytime on or before June 6, 2017.  307 F. Supp. 3d at 674 n. 3. By electing not to be involved in the case evaluation process, Michigan Ambulatory "chose instead to proceed ahead in very uncharted waters." *Id*.